IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CARLOS ALFONSO RAMOS,               )
                                    )
          Petitioner,               )
                                    )
     v.                             )          1:26-cv-917 (LMB/WEF)
                                    )
PAUL PERRY, et al.,                 )
                                    )
          Respondents.              )

<u>MEMORANDUM OPINION</u>

Before the Court is petitioner Carlos Alfonso Ramos's ("Ramos") Motion to Enforce

Order Granting Petition for Writ of Habeas Corpus ("Motion"), in which he seeks enforcement

of the Court's April 10, 2026 Order requiring the federal respondents to provide him with an

individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Although Ramos received a bond

hearing on April 15, 2026 in response to the Court's April 10, 2026 Order, he contends that the

Immigration Judge's decision to deny his request for release on bond violated due process. The

federal respondents have filed an opposition. For the reasons stated below, Ramos's Motion will

be granted, and the federal respondents will be ordered to provide him with a new,

constitutionally compliant § 1226(a) bond hearing before a new Immigration Judge.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the

United States" pending the outcome of removal proceedings. <u>Jennings v. Rodriguez</u>, 583 U.S.

281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during

removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to

implement its authority afford aliens three opportunities to seek release from detention" either on

a monetary bond or on conditional parole.[1] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir.

2022). The first opportunity is with an immigration officer, who is authorized to release a

noncitizen on bond or conditional parole if he "demonstrate[s] to the satisfaction of the officer

that such release would not pose a danger to property or persons, and that the alien is likely to

appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies

bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond

the alien contends are unreasonable, an alien may appeal the officer's bond determination to an

immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346

(citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an

alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may

appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8

C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government

requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk."

Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of

factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length
> of residence in the United States; (3) the alien's family ties in the United States,
> and whether they may entitle the alien to reside permanently in the United States in
> the future; (4) the alien's employment history; (5) the alien's record of appearance
> in court; (6) the alien's criminal record, including the extensiveness of criminal
> activity, the recency of such activity, and the seriousness of the offenses; (7) the
> alien's history of immigration violations; (8) any attempts by the alien to flee

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress
has used the term in the text of the applicable statutes and regulations. The Court's "use of the
term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner]
in this action or others challenging their detention under our immigration laws." Miranda v.
Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond must always comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

## II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the April 15, 2026 bond hearing, which the federal respondents have provided to the Court. Ramos is a native and citizen of Honduras. [Dkt. No. 1] at ¶ 1. He has resided in the United States since 2004, and on February 4, 2026, he was apprehended by DHS "without a warrant for arrest[.]" Id. ¶¶ 19, 22. On April 3, 2026, Ramos filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that he was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Ramos's Petition did "not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 4]. On April 10, 2026, the Court entered an Order finding that Ramos's detention was governed by § 1226(a) and directing the federal respondents to provide him with a standard bond hearing. [Dkt. No. 5]. The Court also ordered Ramos's prompt release from custody pending that bond hearing. Id.

On April 15, 2026, Ramos appeared with counsel via Webex for his scheduled bond hearing before Immigration Judge David Gardey in the Annandale Immigration Court. [Dkt. No. 8] at 1. Ramos argued that he should be released on bond because he presents neither a flight risk nor a danger to the community, citing his steady employment history; ties to the community, including his five U.S. citizen children; pending EOIR-42B Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent residents; steady employment history; and lack of criminal history. Ramos provided the Immigration Judge with his EOIR-42B application; biographical documents which include his marriage certificate and the birth certificates of his children; medical documents related to his U.S. citizen daughter, who is alleged to have autism; and letters of support and moral character from his employer, landlord, and various friends and family. The Department of Homeland Security ("DHS") attorney argued that Ramos should be detained pending the removal proceedings because Ramos entered the United States in 2004 and has made no attempt to file for legal status for years, and has been working without a valid work authorization. The DHS attorney also noted that Ramos provided no evidence of tax returns, and that his EOIR-42B application is highly speculative. Ramos's counsel responded, and the Immigration Judge issued an oral ruling:

> Under the circumstances, I'm going to find that the respondent has established that he is not a danger to the community; however I do not find that he has established that he is not a risk of flight. The respondent illegally entered the United States in 2004, and instead of seeking legalized status he simply lived underground and lived and worked illegally for a period of 20 years without seeking any kind of lawful status. Instead, he has recently filed his 42B application. The respondent has 5 U.S. citizen children, three of whom who live with him and his wife, and two from a prior relationship. This is a significant equity on his behalf, but the respondent has done nothing to legalize his status in terms of employment. There is a letter that he has been employed for the past four years, but again this is by a company that was illegally—in violation of the employment and immigration laws—employing him. There is no evidence that he's paid any kind of taxes even though he has some over [sic] $50,000 in annual earnings for a significant period of time. There is no evidence that he has been doing anything to pay his taxes. Respondent does not have a bond sponsor.

Especially here where respondent has no lawful authorization to work, for him to be released and to have no financial support raises significant issues. The Board of Immigration Appeals has identified a bond sponsor as an important and significant factor to consider. And it is not clear what his fixed address is. The Court has examined the 42B application and there is some indication from the school records indicating that his eight-year-old daughter has developmental delay. Her mother has described her as having autism, but it is not clear that there has been such type of diagnosis. The respondent has some kind of colorable claim for the 42B application, but given the other significant problems with his case, the Court is going to find that he has not met his burden to establish that there are conditions that would ensure his appearance. The Court is going to deny the request for bond.[2]

Although the Immigration Judge denied bond, the Immigration Judge did not provide instructions or a timeframe for Ramos to self-surrender to DHS. Ramos is therefore not currently detained. Additionally, it is unclear from the record before the Court whether Ramos has appealed the Immigration Judge's detention decision to the BIA; however, on April 17, 2026, Ramos filed the pending Motion, which seeks enforcement of this Court's April 10, 2026 Order and contends that the bond hearing he received did not comply with procedural due process requirements. [Dkt. No. 8].

III.

Before reaching the merits of Ramos's Motion, the Court begins, as it must, with considering whether it has jurisdiction to determine whether the federal respondents provided Ramos with a constitutionally compliant § 1226(a) bond hearing. The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond. The federal respondents also assert that Ramos failed to exhaust his administrative remedies because he did not appeal the adverse bond decision

---

[2] This quote is taken from the audio recording of the April 15, 2026 bond hearing. Because neither party has provided a written transcript, the quote reflects the Court's understanding of the Immigration Judge's ruling.

to the BIA before seeking relief from this Court. For the reasons explained below, these arguments are rejected.

A. Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Ramos's Motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." According to the federal respondents, because Ramos's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction. [Dkt. No. 12-2] at 2–5.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." Jennings, 583 U.S. at 295 (cleaned up). In this sense, Judge Ellis's opinion in Hatami v. Chertoff, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by the federal respondents, is instructive. Hatami involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. Id. at 638–39. After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." Id. at 639. Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." Id. The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d]

6

only the decision to deny bond under the statute." Id. at 641–42 (emphasis added). By using the qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Both the Supreme Court and the Fourth Circuit recognize that § 1226(e) does not deprive a district court of jurisdiction when a noncitizen raises a constitutional challenge to the bond hearing he received. In Jennings, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up). In Jennings, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. Id. at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims." Id. at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)." 34 F.4th at 352. Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)." Id. Taking Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process.[3] See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

---

[3] Courts in other jurisdictions have reached similar conclusions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over

As Ramos argues, "[w]hile 8 U.S.C. § 1226(e) states that 'the Attorney General's discretionary judgment regarding' detention or release of noncitizens under § 1226 'shall not be subject to review,' the statutory provision does not bar review of constitutional challenges to those proceedings." [Dkt. No. 8] at 2. Ramos's challenge is constitutional in nature because he asserts that "the bond hearing did not comply with this Court's Order requiring a hearing that satisfies substantive and procedural due process." Id. Specifically, he contends that the facts the Immigration Judge relied upon to deny him bond—including his unlawful status, his working without authorization, and his failure to pay taxes—were so lacking in probative value that the consideration of those facts deprived him of a fair and individualized bond hearing. [Dkt. No. 14] at 1-2. Because "this is precisely the type of claim that belongs in federal court," Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Ramos's Motion.

B. Section 1252(a)(2)(B)(ii)

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of "the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." According to the federal respondents, because the decision whether to release a noncitizen on bond or conditional parole pending the outcome

_____

constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 12-2] at 5–8. This argument is unpersuasive for one simple reason: Ramos's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond. Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction. Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); see also Miranda, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

C. Exhaustion

Finally, the federal respondents argue that Ramos failed to exhaust his administrative remedies by not presenting his "disagreement" with the Immigration Judge's adverse bond decision to the BIA. [Dkt. No. 12-2] at 4. That argument also fails. In Miranda, the Fourth Circuit considered whether a noncitizen asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing must appeal to the BIA before seeking relief in federal court. 34 F.4th at 351. The Fourth Circuit concluded that because "no statute applicable to [the claims at issue] provides that administrative exhaustion is jurisdictional," the "district court had discretion to decide if administrative exhaustion is required." Id.; see McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Here, the federal respondents have not advanced any compelling argument for the proposition that Ramos should be required to appeal to the BIA before seeking relief in this Court, and the Court will not require Ramos to "sit in an ICE detention facility" for months on end while he awaits a BIA decision. Picado, 2026 WL 352691,

9

at *6. Accordingly, "the [C]ourt will exercise its discretion to excuse administrative exhaustion" in this habeas action. Dubon Miranda v. Barr, 463 F. Supp. 3d 632, 643 (D. Md. 2020), aff'd sub nom. Miranda, 34 F.4th 338; accord Diahn v. Lowe, 2026 WL 84576, at *5 (M.D. Pa. Jan. 12, 2026).

IV.

Turning to the merits of Ramos's Motion, the Court finds that most of the facts the Immigration Judge relied upon in denying Lozano Rosales's request for release on bond violated due process. In denying Ramos's request, the Immigration Judge found that, although Ramos established that he is not a danger to the community, he failed to establish that "he is not a risk of flight." In support of that determination, the Immigration Judge relied upon three facts that do not pass constitutional muster, and at least one of which also violates long-standing BIA jurisprudence.

First, the Immigration Judge pointed to Ramos's unlawful status. He stated that Ramos "illegally entered the United States in 2004, and instead of seeking legalized status, he simply lived underground and lived and worked illegally for a period of 20 years without seeking any kind of lawful status." The Immigration Judge also found that "it is not clear what [Ramos's] fixed address is." As an initial matter, it is unclear why the Immigration Judge found a lack of clarity regarding Ramos's fixed address given petitioner's submittal of a letter from his landlord confirming his address. [Dkt. No. 14] at 1. Moreover, a noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles. As another jurist in this district aptly stated, "an individual's bond hearing fails to comport with

10

due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

BIA precedents confirm this conclusion. In Matter of Patel, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him on his own recognizance. 15 I. & N. Dec. 666, 666–67 (BIA 1976). In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification." Id. at 667. But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding." Id. According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id. Therefore, the BIA released the noncitizen on his own recognizance. Id. The BIA has continued to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody." In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).

Second, the Immigration Judge emphasized that Ramos has been working in the United States without authorization. This is problematic for two reasons. To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Ramos's "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place." Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026). If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—"discretionary detention under § 1226(a) . . . would become a de

11

facto mandatory § 1225 detention." Id. Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Id. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed.[4] In short, the link between Ramos's unauthorized employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Ramos of constitutionally sufficient process.

Third, the Immigration Judge expressed concern about Ramos's failure to pay taxes, stating that "[t]here is no evidence that [Ramos has] paid any kind of taxes even though he has some over $50,000 in annual earnings for a significant period of time. There is no evidence that he has been doing anything to pay his taxes." Ramos acknowledges his "tax history was not offered into evidence," but argues that this is not a relevant factor related to his risk of flight. [Dkt. No. 14] at 1-2. This Court agrees. The failure to pay taxes, standing alone, "does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that will reasonably ensure [petitioner's] appearance at future proceedings." Lemus Crispin v. Bondi, et al., 1:26-cv-191-LMB-WEF, slip op. at 12; accord Chavarria Mejia v. Crawford, No. 1:26-CV-253 (LMB/LRV), 2026 WL 819603, at *6 (E.D. Va. Mar. 25, 2026). In sum, the facts relied upon by the Immigration Judge do not provide a constitutionally

---

[4] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").

12

sufficient basis upon which to have denied Ramos's request for release on bond based on the conclusion that he poses a risk of flight.

V.

For all the reasons stated above, Ramos's Motion, [Dkt. No. 8], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal respondents to provide Ramos with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 17 day of June, 2026.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge